IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

STEPHEN GOODWIN, as )
Administrator of the Estate )
of John Stanley Goodwin, )
)
       Plaintiff, )
)
vs. )   Case No. CV 96-TMP-2479-E
)
THE CITY OF PIEDMONT, )
ALABAMA; POLICE CHIEF )
JIMMY TRAMMELL; OFFICER )
MARK HOPWOOD; OFFICER )
EUGENE HALLADAY; and )
OFFICER LEE WOOTEN, )
)
       Defendants. )

**ENTERED**

**DEC 1 5 1997**

## MEMORANDUM OPINION

This is an action pursuant to 42 U.S.C. § 1983 in which the plaintiff, Stephen Goodwin, as Administrator of the Estate of John Stanley Goodwin ("Goodwin"), alleges that his decedent's constitutional rights were violated when Goodwin was shot and killed by Piedmont Police Officer Eugene Halladay. The plaintiff filed his complaint on August 30, 1996, in the Circuit Court of Calhoun County, naming as defendants the City of Piedmont, Alabama, Piedmont Police Chief Jimmy Trammell, Officer Mark Hopwood,[1] Officer Eugene Halladay, and Officer Lee Wooten. On September 20, 1996, the defendants removed this case to federal court pursuant to

---

[1] On November 21, 1996, defendant Mark Hopwood was dismissed voluntarily by the plaintiff.

28 U.S.C. § 1441. The plaintiff seeks a jury trial and money damages.

The defendants filed a motion for summary judgment on July 8, 1997, attaching the affidavits of Kay Pope, Vickie McCurdy, and Piedmont City Administrator Brent Morrison, and as well as excerpts from the depositions of Officer Halladay, Police Chief Trammell, Officer Duffie, Linda Tyree, and Dr. Joseph H. Embry. Though the court entered an order on July 22, 1997, to establish a schedule for consideration of the motion, the plaintiff has not filed a response to it.[2]

## Summary Judgment Standards

The court must determine whether there are any genuine issues of material fact and whether the moving defendants are entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. See F.R.Civ.P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The burden

---

[2]Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties consented on August 26, 1997, to have the undersigned magistrate judge conduct all proceedings in this case, including the entry of a final judgment.

of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. See Clark v. Coats & Clark, Inc., 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. See Celotex Corp. v. Catrett; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Barfield v. Brierton, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett; Bennett v. Parker, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure to proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

Bennett v. Parker, 898 F.2d at 1532.

## Undisputed Facts

The decedent, John Stanley Goodwin, was a paranoid schizophrenic, who was known to Piedmont police for his threatening and violent behavior. On one occasion, police responded to a call at a fast food restaurant where it was reported that Goodwin was threatening customers with a screwdriver. On another occasion they were called to the home of Goodwin's brother, where Goodwin had threatened and chased from the home his brother's wife and daughter, who took refuge in a car until police arrived. On yet another occasion, Goodwin set fire to his brother's car.

On August 19, 1996, police received a call that Goodwin had entered a Jeep Cherokee parked at the Farmers and Merchants' Bank in Piedmont, Alabama. The jeep was owned by an employee of the bank, Vicki McCurdy, who reported to police that there was a loaded gun in the glove compartment. Ms. McCurdy and other employees of the bank observed Goodwin in the jeep waving the gun.

Piedmont Police Officers Wooten, Duffie, Halladay, Glover, and Paslay arrived at the scene. Officer Duffie approached the jeep on the driver's side, and Officers Halladay and Wooten approached the jeep on the passenger's side. The windows of the jeep were rolled up and the doors were locked. Officer Duffie was then told to run which she did, getting away from the rear of the jeep. Officer Wooten then took a position two cars away from the jeep, instructing Goodwin to drop the gun. Goodwin then "began spinning

4

[the gun] on his finger similar to cowboys in western movies." [Complaint, page 2.] Goodwin pointed the gun at Officer Wooten. He then turn and pointed the gun over the back of the front seat directly at Officer Halladay. At that time, Officer Halladay fired one shot at Goodwin through the right rear window of the jeep. Officer Wooten heard the shot and thought Goodwin was firing at him, and he fired one round at Goodwin. Goodwin was struck only and killed by the bullet fired by Officer Halladay.[3]

Glen R. Murphy, a police use-of-force expert, who conducted an investigation of the homicide, offered the following opinions[4]:

> -The City of Piedmont Police Department procedures on use of deadly force were in accord with the custom, practice, procedure and policy for the use of deadly force throughout the state of Alabama and its statutes.
>
> -The City of Piedmont Police Department appropriately responded to a call for a man flourishing a weapon at a bank. The response was immediate and sufficient in numbers to appropriately manage the incident.
>
> -The police officers gave the suspect ample notice of their presence and sufficient orders to drop the weapon. The suspect, failing to conform to properly given police orders but continuing to point the weapon at police officers, caused the officers to believe their lives were in jeopardy.

---

[3] Dr. Joseph Embry, a forensic pathologist employed by the Alabama Department of Forensic Sciences, testified that Goodwin was struck by one bullet that passed initially through his right hand and then into his right lower face, finally lodging in his fifth cervical vertebra.

[4] Mr. Murphy offered several other opinions which were in the nature of legal opinions. The court has considered only opinions of a factual nature, not legal opinions.

5

-The police officers' response in this case was appropriate within accepted police practice, custom, training and policies within the State of Alabama and the United States.

### Discussion

The plaintiff alleges that the Piedmont police officers used excessive force to disarm Goodwin in violation of Goodwin's Fourth and Fourteenth Amendment rights. He further alleges that the City of Piedmont was deliberately indifferent to Goodwin's rights by failing to properly train it officers with regard to disarming a suspect. Based on the undisputed evidence, the defendants' motion for summary judgment is due to granted on all of plaintiff's claims.

### Police Chief Trammell

The undisputed evidence does not support a claim against Police Chief Trammell under § 1983. Police Chief Trammell was not present at the time of the shooting and did not participate in or approve of the force used, nor did he conspire with anyone to deprive the plaintiff of his rights. For a supervisor like Chief Trammell to be liable for a violation of the plaintiff's rights, there must be an "affirmative link" between the alleged violation and some act or omission of the supervisory defendant sought to be held liable. Gilmere v. City of Atlanta, 774 F.2d 1495 (11th Cir. 1985) (en banc), cert. denied, 476 U.S. 1115, 106 S. Ct. 1970, 90 L. Ed. 2d 654 (1986). Although Police Chief Trammell was Officer Halladay's and Officer Wooten's superior, that position alone will

6

not sustain an action under § 1983. See *Fundiller v. City of Cooper City*, 777 F.2d 1436 (11th Cir. 1985); see also *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). The plaintiff has not shown that Police Chief Trammell either knew of or approved the use of deadly force used by Officers Halladay and Wooten, nor has he shown that their use of that level of force was the direct product of any policy, custom, or usage authorized by Police Chief Trammell. There is no evidence that of such widespread abuse of deadly force by Piedmont police that he was on notice of the need for further training or supervision. As such there is no "affirmative link" between the force used on Goodwin and Police Chief Trammell in this action. Hence, defendant Trammell is entitled to summary judgment.

### City of Piedmont

The city can be liable for Officer Halladay's and Officer Wooten's use of excessive force only if the force was pursuant to some policy or custom or usage promulgated or approved by the city. See *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *Canton v. Harris*, 489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989); *Fundiller v. City of Cooper City*, 777 F.2d 1436 (11th Cir. 1985). Mere *respondeat superior*, or the employment relationship between the officers and the city is not enough. The plaintiff has not shown any deliberate indifference by the city to the rights of people encountering its officers. See *Canton v. Harris*, *supra*. Without some presentation

of specific evidence by the plaintiff to establish a genuine issue of fact that the city of Piedmont had a policy or custom of approving the inappropriate use of force by its officers, the plaintiff has not shown that he can carry his ultimate burden of proving liability on the part of the city. The City of Piedmont is entitled to summary judgment.

### Officers Wooten and Halladay

In determining whether excessive force was used by an arresting officer, a court must apply a Fourth Amendment analysis, analyzing whether the challenged arrest was reasonable under the circumstances. Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. The standard requires a court to determine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397. This objective test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. The United States Supreme Court has explained:

8

> [W]here [an] officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or the threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, if some warning has been given.

Tennessee v. Garner, 471 U.S. 1, 11-12, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985); Pruitt v. City of Montgomery, 771 F.2d 1475, 1478-79 (11th Cir. 1985). But when a fleeing felon poses no threat to the officer or others, the use of deadly force to seize the suspect or prevent him from escaping is unreasonable. See Tennessee v. Garner, 471 U.S. at 11; Harrell v. Decatur County, Ga., 22 F.3d 1570 (11th Cir. 1994).

The court concludes that Officer Halladay's and Officer Wooten's actions were objectively reasonable under the circumstances and did not violate the plaintiff's constitutional rights. It is undisputed that Goodwin was waving a loaded gun and that police officers instructed him several times to drop the weapon. Instead of dropping the gun, he pointed it directly at Officer Wooten and then directly at Officer Halladay. It was reasonable for Officer Halladay to fear that he was about to be shot by the plaintiff and it was a reasonable reaction for him to fire his weapon at the plaintiff. After Officer Wooten heard the shots fired and believing that they were being directed at him, it was reasonable for Officer Wooten to fear that he was being fired at by the plaintiff and it was a reasonable reaction for him to

9

fire his weapon at the plaintiff.[5] Because Officer Halladay's and Officer Wooten's actions were objectively reasonable under the circumstances of the threatening behavior by plaintiff (who was known by the officers for his violent conduct), they did not violate his rights under the Fourth or Fourteenth Amendments. Officers Halladay and Wooten are entitled to summary judgment.

Accordingly, for the reasons stated above, the defendants' motion for summary judgment will be GRANTED and in a separate order this action will be DISMISSED WITH PREJUDICE.

The Clerk is DIRECTED to send a copy of this Memorandum Opinion to all counsel of record in this action.

DATED this the 15th day of December, 1997.

_____
T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE

---

[5] It also must be remembered that Officer Wooten's shot did not strike plaintiff.

10